# REPORTS OF CASES

### ADJUDGED IN

# THE COURT OF APPEALS

#### OF THE

## DISTRICT OF COLUMBIA.

## GUILFORD GRANITE COMPANY *v.* HARRISON GRANITE COMPANY.*

FOREIGN CORPORATIONS; JURISDICTION; CONTRACTS; BONDS; PRINCIPAL AND SURETY; VARIANCE; RESCISSION; WAIVER; EVIDENCE.

1. Under D. C. Code, § 1537 (which re-enacts with amplification D. C. Rev. Stat. § 790), an action by a nonresident corporation against another nonresident corporation is maintainable in this District when the defendant does business and has a place of business here; § 1 of the judiciary act of Congress of March 3, 1887, providing that no civil suit shall be brought before any circuit or district court of the United States against any person in any other district than that of which he is a resident, not applying to or being in force in the District of Columbia.

2. The general restrictions of the Constitution of the United States which govern the exercise of jurisdiction by the courts of the United States within the states have no operation in the District of Columbia; and the conditions of jurisdiction existing here are so different that the provisions of § 1 of the judiciary act of Congress of March 3, 1887, are locally inapplicable.

---

*Lost Instruments.—As to right of action at law on lost negotiable paper, see the presentation of the authorities on that subject in editorial note to *Butler* v. *Joyce*, 16 L. R. A. 205.

VOL. XXIII—1

3. The surety on the bond of a contractor for certain portions of construc·
tion work, for each portion of which a given price was to be paid, has
no right to complain if the owner voluntarily discharges the con-
tractor from the performance of one portion of such work, where there
is no detriment to the interest of the surety. Under such circum-
stances there is no material change or extension of the contract.

4. While the obligee in a bond may not generally, in an action on the bond,
show a waiver of any one of the stipulated conditions precedent in
lieu of performance, this is true only where the waiver of performance
has the effect of making a new contract or obligation.

5. A declaration on a bond alleging performance of conditions precedent
upon the performance of which by the plaintiff his action depends, is
not supported by proof of facts constituting a waiver of such condi-
tions.

6. Where a copy of part of a lost instrument was excluded from evidence
on the ground that it was a copy of only a part of the instrument, it
was *held* that the evidence was properly excluded, it appearing from
the record that the loss of the original had not been sufficiently ac-
counted for.

7. Where it is sought to prove an original paper by a copy, and it appears
that the original had been delivered to the party offering the copy in
evidence, it is incumbent upon such party to show that inquiry and
search had been made for the original.

⁌. On an appeal from a judgment against the principal and surety on a
bond, where the defendants pleaded severally, the judgment was af-
firmed as to the principal, and reversed as to the surety, on the ground
that there was a variance between the declaration and the proof.

No. 1296.   Submitted October 14; 1903.   Decided November 6, 1903.

HEARING on appeal by the defendants from a judgment of the
Supreme Court of the District of Columbia, in an action on a
bond against the principal and surety.   *Affirmed as to the prin-
cipal, and reversed as to the surety.*

The COURT in the opinion stated the case as follows:

This action was begun in the supreme court of the District on
June 6, 1900, by the Harrison Granite Company, a corporation
created by the State of Michigan, against the Guilford Granite
Company, as principal, and the Fidelity & Deposit Company of
Maryland, as surety, upon a bond, in the sum of $4,000, given
to secure the performance of a contract.

Both defendants are corporations created under the laws of
the State of Maryland; the surety company having a resident

general agent in the District of Columbia, where the contract between its principal and the plaintiff was made and to be wholly performed.

The contract between the plaintiff and the Guilford company was for the construction of certain portions of the pedestal of the monument to Gen. W. T. Sherman, to be erected in the city of Washington, and bears date September 13, 1898.    The parts of the work to be performed consist of certain distinct items, namely, concrete foundations, brick work, setting of granite blocks, and furnishing fillings, for each of which a certain sum is promised to be paid.    Provision for extra work in the matter of the items for foundation and brick work is made, and certain time limits are stipulated.    It is also stipulated that, in the event the contractor should fail to prosecute the work with diligence, or in the performance of any of its obligations, the plaintiff shall have the right, upon three days' written notice, to provide the necessary labor and materials and deduct the cost from the sum due the contractor; and further, that the owner shall also be at liberty to terminate the employment of the contractor, take possession of and complete the work, and that the contractor shall pay any cost thereof in excess of the contract price for the same.    The bond of the Fidelity company to secure the performance of this contract on the part of the contractor bears date September 16, 1898, but the premium therefor was not paid until October 26, 1898, when it was delivered to the plaintiff.    The bond is in the sum of $4,000, and secures the faithful performance of the contract by the Guilford company, which is referred to and made a part of the same.    The bond recites, among some others not important in this controversy, the following conditions precedent to the owner's right to recover thereon:

"If the said principal shall abandon said contract, or fail to comply with any or all of the conditions of said contract, to such an extent that the same shall be forfeited, then said surety, upon the notice above stated, shall have the right and privilege, in its option, to sublet or complete said contract, whichever said surety may elect to do, provided it is done in accordance with said contract, and, if said contract shall be sublet or completed by said surety, then the reserve in the hands of said owner, together with

any other moneys due or to become due, shall be paid by said owner to said surety, at the times mentioned in said contract, on account of any loss or expenses arising out of said contract and any loss or expenses sustained by said surety in subletting or completing said contract; and if said owner shall complete or relet the said contract, then all reserves, deferred payments, and any and all other moneys and properties at that time due and payable or that thereafter may become due and payable to the said principal, under and by virtue of said contract, shall be credited upon any claim the said owner may make upon said surety because of the failure of said principal to comply with the terms of said contract.

"The said surety shall be notified in writing of any act on the part of the said principal, or its agents or employees, which may involve a loss for which the said surety is responsible hereunder, immediately after the occurrence of such act shall have come to the knowledge of said owner, or his duly authorized representative or representatives, whoever shall have the supervision of the completion of said contract, and a registered letter mailed to the president of said surety, at its principal office in Baltimore city, Maryland, shall be the notice required within the meaning of this bond."

The declaration set out the terms of the contract and bond, alleged performance on the part of the plaintiff, default by the defendant, abandonment of the work, etc., and claimed the penalty of the bond. Subsequently, by order of the court, the plaintiff filed a bill of particulars of the cost of the work done after the contractor's default, the first item of which bears date January 31, 1899, and the last, November 29. After allowing credits, the balance claimed to be due is $1,825.62.

The Fidelity company appeared specially, on June 26, 1900, and filed a demurrer denying the jurisdiction of the court, "because upon the allegations of said declaration it appears that this suit ought, if brought in a court of the United States, to be brought in the district of the residence of the plaintiff, that is to say, in the eastern district of Michigan, or in the district of the residence of the defendants, that is to say, in the district of Maryland, and not in the District of Columbia, of which neither

the plaintiff nor either of the defendants is a resident." This was overruled, with leave given to plead within twenty days, and exception was duly taken. Not waiving the question of jurisdiction, the defendant surety company then filed twelve pleas. These deny indebtedness as alleged, or that the plaintiff has performed its obligations under the contract of September 13, 1898, or the conditions of the bond, or has been damnified. The twelfth plea alleged that the contract of September 13, 1898, "was, on or about October 26, 1898, without the knowledge, privity, and consent of the said defendant, altered in a material part, by an agreement entered into between the parties to said contract bearing date the 26th day of October, 1898, whereby it was mutually agreed to cancel and rescind the portions of the said contract relating to the excavating and concrete work and to release each other from all liability on said contract so far as the same related to concrete and excavating work." The Guilford Granite Company, without raising the question of jurisdiction, filed substantially the same pleas, and one additional in the nature of set-off, asking judgment thereon for the sum of $2,350.60 claimed to be due. The plaintiff joined issue upon the pleas of the Fidelity company, and replied to the twelfth plea, denying that the contract had been altered without the consent of said surety, and alleging that the change was one by which the work and labor of the Guilford Granite Company was lessened, and was in the interest of said Fidelity company, and was made with the full knowledge, consent, and privity of the Fidelity & Deposit Company. Substantially the same replication was made to the like plea of the Guilford company, and the following added: "By consent and agreement of all the aforesaid parties, all the other conditions and terms of said contract were to remain in full force, and it was not intended to release, and did not in any manner release, the defendants or either of them from their obligations under said contract." The bill of exceptions, purporting to give the substance of the evidence introduced on the trial, is confused and unsatisfactory, owing to the fact, it is said, that it was settled after a long trial without the aid of a stenographer. It appears therefrom, and from agreed statements on the argument, that Carl Rohl-Smith, a sculptor, had a contract with the

United States for the erection of the entire Sherman monument. That plaintiff, a dealer in cut granite, undertook with him to erect the granite pedestal for the statue, and sublet to others certain parts of the work, the Guilford Granite Company undertaking those stated in the contract hereinabove mentioned.

The entire work was greatly delayed owing to many causes, and the government was urging completion.   Among other things, it was discovered that the location was upon ground that had been filled years before, and before the concrete could be laid for the foundation it became apparent that the excavation must be made deeper than had been contemplated and that piles should be first driven for security.   This extra work, it seems, was a burden to be borne by the chief contractor, the sculptor, and Congress afterward made an appropriation to compensate him therefor.   This circumstance seems to have no bearing upon the issues in the case further than that it accounts for much of the delay and some of the difficulties between the plaintiff and the defendants, concerning which there was much correspondence.   As a result of the difficulty attending the foundation work, the character of which was to be so materially altered, the plaintiff and the Guilford company entered into a written agreement October 26, 1898, to cancel and rescind the portions of the contract between them relating to excavating and concrete work, "and to release each other from all liability on said contract as far as the same relates" thereto.   The bond in question, though dated September 16, 1898, was then in the hands of the agent of the Fidelity company in the city of Washington undelivered.

Plaintiff introduced evidence tending to show that J. Sprigg Poole was the agent of said company for all purposes relative to the entering into performance, and fulfilment of said agreement between plaintiff and said company to complete the said contract in the place of the Guilford company.

Plaintiff's evidence further tended to show "that at the time the plaintiff, through its agent Harrison, took the said Poole the contracts and the specifications referred to in the bond in suit for his information and to become a part of said bond, and as a basis for the responsibility of said bond, and the scope thereof was then and there discussed between them; that in pursuance

of said contract the defendant, the Guilford Granite Company, began work under the said contract of September 13, 1898, in anticipation of the bond in suit; and that the bond in suit was furnished and paid for on or about the 26th day of October, 1898, being delivered by said Poole and the payment thereof being made to him." The Guilford company proceeded under the amended contract until May 12, 1899, when plaintiff took the work out of its hands. Touching this the plaintiff's evidence tended to show, as recited in the bill of exceptions:

"That on May 12, 1899, the Guilford company was in default under its contract; that plaintiff then orally notified the Fidelity company's agent Poole, at his office in Washington, of such default; that then and there it was orally agreed by said agent and plaintiff's representative that plaintiff should pay the Guilford company for the 'fillers' that had been furnished by it; that the contract should be completed by plaintiff; that, in event the cost of its completion should exceed the unpaid balance of the contract price, the Fidelity company would pay plaintiff such excess. That, in pursuance of said agreement, plaintiff paid the Guilford company $508.44 for the 'fillers;' and $115.95 for the current pay roll of the Guilford company; that it, plaintiff, took charge of the work May 12, 1899, and completed it December 9, 1899, at a cost of $1,825.62 in excess of the contract price of the unrescinded part of the contract of September 13, 1898, as shown by the plaintiff's bill of particulars."

Plaintiff gave no notice in writing to the Fidelity company as stipulated in the condition of the bond, but communicated with the Washington agent in person.

The testimony relating to the agency of the said Poole was given in part by him as a witness. Following that, which has been set out above, the bill of exceptions further recites that the plaintiff's evidence tended to show:

"That plaintiff's representative called upon said. Poole and stated the inability of the Guilford Granite Company to perform the contract of September 13, 1898, and that the War Department was pressing the plaintiff to hasten the work, and something must be done immediately; that said Poole stated that said the Fidelity & Deposit Company had no facilities for doing

such work, and inquired if plaintiff could not perform such work, it being in its line of business. That said plaintiff's representative stated that plaintiff had in its employ Mr. Heidenreich, who could superintend the work; that said Poole inquired as to the probability of a loss occurring; that plaintiff's representative in reply stated that the Guilford Granite Company had, according to his judgment, a fair contract, and that it was his belief and hope that the same could be performed without substantial loss. That thereupon said Poole, in behalf of the said the Fidelity & Deposit Company of Maryland, requested plaintiff to proceed with the work.

And further evidence tending to show that at said time it was agreed between said Poole, as agent for said defendant, the Fidelity & Deposit Company of Maryland, and the plaintiff's representative, that defendant, the Guilford Granite Company, should have every facility for seeing and examining the work as it progressed, and that statements and vouchers of the expenses thereof should be rendered from time to time, by the plaintiff to the said Guilford Granite Company; that the defendant, the Guilford Granite Company, also insisted upon such an arrangement; that in pursuance of agreement among the said three representative parties, the following agreement was executed:

WASHINGTON, D. C., May 12, 1899.

THE GUILFORD GRANITE COMPANY.

GENTLEMEN:—In completing the work on the Sherman monument in pursuance with our contract with you, we agree to allow you the privilege of having a representative on the ground who shall have access to the accounts and pay rolls at all times; and we agree further to procure vouchers as far as practicable for all sums of money expended in connection with the said monument in completing the same under our contract with you, which vouchers shall represent materials supplied and labor performed in connection with said contract for said work.

Yours truly,

HARRISON GRANITE CO.

W. H. HARRISON.

Plaintiff's testimony also tended to show that it proceeded to complete the contract after May 12, 1899, keeping an account of the several items of expenditure, and the excess above the contract price amounted to $1,825.62, as stated in the bill of particulars; that upon completion the bill and vouchers were shown to Juvenal and Brunner, officers of the Guilford company, and to their attorney, who admitted that after the allowance of all credits there was a balance due plaintiff of $1,825.62.

Also that on December 19, 1899, plaintiff sent a letter to the Fidelity company by registered mail reciting the facts relating to the default of the Guilford company, and the performance of its contract by plaintiff, with the consent, approval, and constant knowledge of its Washington agent, and stated the gross amount expended.

One Heidenreich, who superintended the monument construction, including the part contracted for by the Guilford company on behalf of the plaintiff, testified that he kept a record and account of every item of expenditure for materials and labor and the same was introduced in evidence.

"Upon cross-examination said Heidenreich testified that he provided labor and materials necessary to complete the contract between plaintiff and the Guilford company, and also provided other labor and materials necessary to complete the monument under the contract between plaintiff and Rohl-Smith; and also cut and repaired some stones furnished for said monument by the Fletcher Granite Company, under a contract between that company and plaintiff. That he did not keep separate accounts of the expenses incurred by him under the said three contracts, but kept an account of the expenses incurred by him under all three said contracts.

"That said witness testified that the account kept by him for the work done on the monument was so designated thereon that the plaintiff was enabled to pick out the items therein which related to the contract of September 13, 1898; and that the plaintiff's bookkeeper could pick out the said accounts so that the plaintiff might pick out therefrom the items which related to said last-named contract. That he could tell from said memoranda on what stones work was done. That all of

said memoranda were received in evidence.   That the cost of cutting and repairing the stones furnished by the Fletcher company was set down separately on his said account; that the cost of labor and materials used by him in completing the monument under plaintiff's contract with Rohl-Smith, and not included in plaintiff's contract with the Guilford company was blended on his said account with the cost of labor and materials used by him in completing plaintiff's contract with the Guilford company. That he charged himself on said account with all moneys received by him from plaintiff for the completion of the monument, and credited himself on said account with all expenses incurred by him in completing the monument, that 'I (Heidenreich) kept those accounts as accounts between me (Heidenreich) and the Harrison Granite Company.   I (Heidenreich) had nothing to do with the Guilford Granite Company.'

"Thereupon, defendants moved the court to strike out Heidenreich's said account, and to direct the jury to disregard the same; the court overruled the motion; defendants duly excepted to said ruling.

"Said Heidenreich also testified that he did not keep the accounts as such, but sent the company statements or memoranda so that the company's bookkeeper could make up the account and make proper charges against the persons to whom such charges should be made, and the bookkeeper testified that he made up the accounts from said memoranda.

"Said Heidenreich further testified upon cross-examination that while superintending said work he kept a 'time-book' and a 'log;' that the 'time-book' showed the 'time' of the men employed by him in the monument, and the 'log' showed, among other things, on what work the men were employed; that he had been unable to find the 'log,' and did not know where it was."

Defendants offered evidence tending to show that there was difficulty with the foundation which led to the agreement rescinding that part of the contract, which agreement (heretofore referred to) was read in evidence.   They produced considerable correspondence between plaintiff and the Guilford company relating to carrying on, giving up the work, and charges therefor, which tended to show that the Guilford company did not admit

the indebtedness claimed by the plaintiff, etc.    (It is otherwise
of no consequence.)    Other evidence by the witnesses Jouvenal
and Brunner was introduced, denying the admission of the bal-
ance as testified to by the plaintiff, and tending to show that
plaintiff had, instead, offered at one time to settle by exchang-
ing receipts in full; also that plaintiff had rendered an erroneous
bill at first, which it afterwards admitted.    Further evidence
tended to show that the Guilford company was entitled to certain
credits for extra work, etc. which should come off the account of
Heidenreich.    The sum of these does not clearly appear; the
plaintiff having controverted them, and the jury having accepted
his statement as true, their exact statement is of no importance.
Defendants' evidence also showed that the bond was applied for
to the Fidelity company's agent in Washington, who forwarded
the same to the office of the company in Baltimore, where it was
executed and returned to the Washington agent who delivered
the same to the Guilford company's agent.

The following recital of the bill of exceptions sets forth a spe-
cial ground of exception:

"Plaintiff's counsel, in response to defendants' request to pro-
duce the aforesaid 'log,' stated that it was unable to produce the
same, and did not know where it was.    Said Brunner then testi-
fied that said Harrison showed to him the aforesaid 'log,' and
gave him permission to copy the same; that he made a true copy
of part of said 'log,' and hired an employee of the Raleigh Hotel
(where the said 'log' was handed to him by Harrison), whose
name he did not remember, to complete the copying of said 'log.'
That he subsequently received the copy of the 'log' but has never
since seen said 'log' and does not know where it is.    That, after
the copy was made, he was informed by said Harrison that said
'log' was left for him, Harrison, at the office of 'The Raleigh.'
Defendants then offered in evidence that part of the copy of said
'log' made by said Brunner, for the purpose of showing that part
of the labor and materials charged against the Guilford company
on plaintiff's statement of its claim hereinbefore set forth had
been used by Heidenreich upon work not embraced within the
contract between plaintiff and the Guilford company; that no
counter-credit to part of said charges is allowed the Guilford

company in plaintiff's said statement of its claim, and that the counter-credit to part of said charges allowed to the Guilford company on plaintiff's said statement of its claim was less than the counter-credit to which the Guilford company was entitled; and to show further that part of the expense incurred by said Heidenrich in cutting and repairing stone furnished by the Fletcher Granite Company under the contract with plaintiff had been charged against the Guilford company in the aforesaid statement of plaintiff's claim without any counter-credit for such part being allowed to the Guilford company on said statement of account.    The court refused to permit said part of said copy to be given in evidence for the reason that it was a copy of only a part of the 'log;' defendants duly excepted to said ruling.    Defendants then offered in evidence for the purpose aforesaid the whole of said copy of said 'log;' the court refused to permit said copy to be given in evidence for the reason that, except as to the part of the copy made by Brunner, said copy had not been shown to be a true copy; to said ruling defendants duly excepted. After said rulings were made, plaintiff's witness testified that the statement 'that he informed said Brunner that said log was left for him, Harrison, at the office of the Raleigh, was denied by plaintiff's witness, Harrison.    Said Harrison also testified that he had never seen said log after he gave it to said Brunner at said hotel to be copied, and did not have possession of it and did not know where it was.' "

The court after refusing defendants' request to direct the jury to find a verdict for each of them, stated the case to the jury and gave them certain instructions prayed by the plaintiff over the objection of the defendants, who excepted thereto.    These are substantially:

1. That under the terms of the contract the plaintiff had the right, if the work being done was unsatisfactory, and had reason to believe that the Guilford company was not performing the same as agreed, to go into possession and do the work at the latter's expense.

2. That whilst the bond required notice of default [by registered letter] to be given the Fidelity company in writing, still

if it "had actual notice of such default, and through its agent in Washington, duly authorized thereunto, arranged with the plaintiff to complete the work embraced in said contract, then the absence of such registered letter is no defense to the action on said bond, and said Fidelity & Deposit Company will be deemed to have waived said requirement in the bond."

3. That under said contract the Fidelity company had the right to take up and finish the work of the Guilford company, but said company, through its duly authorized agent, having, upon the default of its principal, arranged with the plaintiff to complete the work, or, having approved the same, is estopped from setting up the want of notice by registered mail.

4. If the jury find from the evidence that said Guilford Granite Company failed or were about to fail, and make default, in the performance of the work under said contract, and that immediately thereupon the plaintiff notified said Fidelity & Deposit Company of such default by calling upon its agent in Washington at his office, who was then and there duly authorized to act for said company, if you so find from the evidence, and that then and there the agent of the said Fidelity & Deposit Company told the plaintiff's representative that the said Fidelity & Deposit Company had no one it could engage to do the work under said contract, and asked the plaintiff's representative to do the work thereunder, which the plaintiff's representative thereupon agreed to do; that the plaintiff, in pursuance of said agreement, undertook to do said work under said contract to be performed by the Guilford Granite Company, and did perform and finish the said work under said contract; that the said agent of said Fidelity & Deposit Company inspected said work from time to time as the same progressed; and that when the work was thus completed the plaintiff notified said Fidelity & Deposit Company of its completion and the cost thereof by registered mail notice to said Fidelity & Deposit Company's office in Baltimore, in compliance with the agreement with said Fidelity & Deposit Company's duly authorized agent in Washington, and that said Fidelity & Deposit Company did not then, and at no other time, prior to commencement of this suit, raise the objection to the same,—then and

in such case said Fidelity & Deposit Company will be deemed to have waived the requirement of the bond to serve a registered mail notice on said Fidelity & Deposit Company in Baltimore as required by said bond and to have acquiesced in the doing of the work by the plaintiff and in the necessary expenses of completing the same.

5. This instruction carefully stated the correct measure of damages in event the jury should find for the plaintiff against the Guilford company.

6. That if the Fidelity company arranged with plaintiff to complete the work upon default of its principal, and the same was completed, then plaintiff was entitled to recover from it the same amount found against its codefendant.

6½. The jury are instructed further that the so-called contract of October 26, 1898, between the plaintiff and the defendant the Guilford Granite Company is in legal effect a completion of the underground or foundation work on the pedestal of the Sherman monument embraced in the contract of September 13, 1898, so far as both the defendants are concerned; and that it in no wise affects the work done, or the cost thereof by the plaintiff for the defendant the Guilford Granite Company under the alleged agreement between the Fidelity & Deposit Company through its Washington agent with the plaintiff's agent; and that the responsibility of the defendant, the Fidelity & Deposit Company, to secure the performance of the said contract of September, 1898, in said bond is not affected thereby.

The defendants offered a series of prayers. These were, in substance,—to return a verdict for defendants; that the bond does not secure the performance of any contract save that of September 13, 1898, referred to therein; to strike out all evidence relating to parol waiver of the conditions of the bond; that the plaintiff could only recover nominal damages; that the burden is upon the plaintiff to prove the indebtedness of the Fidelity company; that, if subsequent to the delivery of the bond, the plaintiff and the Guilford company changed the contract relating to the foundation, the verdict should be for the Fidelity company; that, if the contract was changed in a material particular,

the verdict should be for the Fidelity company; that a failure to comply with the condition of the bond for notice by letter would entitle the Fidelity company to a verdict; that, if the said written notice was not given until three months after default of the Guilford company, the verdict should be for the Fidelity company; that notice to the agent of the Fidelity company was not a compliance with the condition of the bond; that notice not in writing was not compliance with the condition.

These prayers were refused; but the record shows that the prayer relating to the burden of proof was not objected to by the plaintiff, and "was not intentionally refused by the court, but was an oversight. Counsel for both parties were present when said charge was given."

The 23d special prayer of the defendants was to the effect that no act of the agent of the Fidelity company in the District bound said company unless the jury should find that he was authorized by said company to perform the act; this the court gave after adding the words, "or that the Fidelity company ratified or directed the act of the agent."

The 24th special prayer was to the effect that if, after the default of the Guilford company, the plaintiff paid it the sum of $508.44 on account of labor and material, then their verdict should be for the Fidelity company. This was refused. Another prayer relating to the allowance of said item as a credit was given; but it was then conceded by counsel on both sides that the same was not charged against either defendant in the bill of particulars.

The 25th special prayer was, in substance, that if the contract of September 13, 1898, between the plaintiff and the Guilford company was altered in the manner prescribed in the written agreement between said parties on October 26, 1898, then the verdict should be for the Fidelity company, unless the jury should find from the evidence that such change was made with "the privity, knowledge, and consent of the Fidelity company." This the court gave with the addition of these words: "And unless it further appears from the evidence that the liability of the Fidelity & Deposit Company was thereby increased." Ex-

ception was taken to this amendment. The court then gave defendants' prayers 26 and 27, which were, in substance, that the privity, knowledge, and consent of the agent of the Fidelity company is not that of the said company, unless the jury should find from the evidence that the agent had authority to consent, and that the burden of proof is upon the plaintiff to show, by a fair preponderance of the evidence, the authority of the agent to do any act necessary to be shown to entitle the plaintiff to recover.

The verdict was for the plaintiff for the entire amount claimed in the bill of particulars, namely, $1,825.62. From judgment entered thereon the defendants have both appealed.

*Mr. L. H. Poole* for the appellants:

1. As none of the parties to this suit are residents of this District, the defendants are exempted from answering here by § 1 of the act of August 13, 1888, chap. 866 (25 Stat. at L. 433), if that section is in force here. Section 1 of the act of 1888 is in force here by virtue of § 1 of the Code, which extends to this District "all general acts of Congress not locally inapplicable, * * * except in so far as the same are replaced by some provision of this Code." That section (formerly § 93, Rev. Stat. D. C.) has received a very liberal construction, especially in *Page* v. *Burnstine,* 102 U. S. 664, and *Chase* v. *U. S.* 7 App. D. C. 149. But prior to and independently of § 1 of Code, general language in the Constitution and laws has been held applicable to the District. *Loughborough* v. *Blake* (D. C.) 5 Wheat. 317; *Callan* v. *Wilson* (D. C.) 127 U. S. 540; *De Geoffroy* v. *Riggs,* 133 U. S. 258; *Talbott* v. *Silver Bow County,* 139 U. S. 438; *Capital Traction Co.* v. *Hof* (D. C.) 174 U. S. 1; *Knowlton* v. *Moore,* 178 U. S. 107. Section 3 of the act of 1888 is in force here (17 App. D. C. 197), § 4 seems to be locally applicable, § 7 is observed here, and the exemption conferred by § 1 makes that section peculiarly applicable to the seat of government, subject to exceptions and limitations not applicable to the facts in this case. The Federal court in Maryland, where the defendants reside, was open to plaintiff, and to compel the de-

fendants to answer here, where none of the parties reside, would clearly defeat the purpose, if it did not also violate the letter, of both § 1 of the act of 1888 and § 1 of the Code. Upon him who claims that a general act of Congress is not in force here rests the burden of showing wherein it is "locally inapplicable."

2. Nonperformance of the conditions precedent was a complete defense to the action. *Dermott* v. *Jones,* 23 How. 220. Plaintiff's right of recovery is limited to damage under the breach assigned, although it may have sustained damage under a breach not assigned. *U. S.* v. *Chotcau,* 102 U. S. 603. As the only breach assigned in the declaration is nonperformance of the contract as a whole, its right of recovery is limited under the declaration to damages from nonperformance of the contract as a whole.

3. The bond cannot be forfeited by parol waiver of its terms because, though parol waiver of the terms of an instrument under seal may *discharge* a party, such waiver is not valid to *charge* him in an action at law on the instrument. 1 Chitty, Pl. chap. 3, pp. 115 *et seq.,* title *Covenant; Goldsborough* v. *Orr,* 2 Cr. C. C. 401; *U. S.* v. *Jones* (D. C.) 8 Pet. 416; *O'Brien* v. *Fowler,* 67 Md. 564; *Baldwin* v. *Munn,* 2 Wend. 399; *Head* v. *Wadham,* 1 East, 619; *Brown* v. *Goodman,* Cited in note to *Littler* v. *Holland,* 3 T. R. 590, and reviewed and reaffirmed in *Freeman* v. *Adams,* 8 Johns. R. 115. Plaintiff has mistaken its cause of action against the surety, if it has any. Instead of declaring on the bond of 1898, it should have declared on the alleged oral agreement of May, 1899. 1 Chitty, Pl. chap. 3, pp. 115 *et seq.,* title *Covenant; Fresh* v. *Gilson* (D. C.) 16 Pet. 334; *Dermott* v. *Jones* (D. C.) 23 How. 223; *Dermott* v. *Jones* (D. C.) 2 Wall. 1; *Freeman* v. *Adams,* 8 Johns. R. 115; *Brown* v. *Goodman* (*in nota*), 3 T. R. 590. Whether the local agent made, or had authority to make, the alleged oral agreement of May, 1899, or whether it was supported by consideration, or whether unenforceable because not in writing, are questions irrelevant in this action on the bond.

4. As to the surety, the bond in suit is within § 4 of 29 Car. II. chap. 3; Code, § 1117. Though parol waiver of the terms

of a contract within our statute of frauds may *discharge* a party, such waiver is not valid to *charge* him in an action at law on the contract.    Starkie, Ev. 10th Am. ed. p. 724; 1 Greenleaf, Ev. § 302; Brown, Stat. of Frauds, 424–436; *Goss* v. *Lord Nugent,* 5 Barn. & Ad. 65; *Harvey* v. *Grabham,* 5 Ad. & El. 61; *Stead* v. *Dawler,* 10 Ad. & El. 57; *Marshall* v. *Lynn,* 6 Mecs. & W. 109; *Emmet* v. *Dewhirst,* 3 McN. & G. 587; *Slingluff* v. *Builders' Co.* 89 Md. 562.    See also *Assurance Co.* v. *Building Asso.* 183 U. S. 318.

5. But even if the bond could be forfeited by parol waiver of its terms, plaintiff's allegation of performance of the conditions precedent can be sustained by nothing short of performance according to the terms of the bond.    Neither parol waiver of the conditions, nor excuses for nonperformance, nor estoppel *in pais,* can avail plaintiff under the pleadings in this case.    2 Starkie, Ev. Am. ed. 1826, p. 432, title *Covenant;* 2 Greenleaf, Ev. 16th Am. ed. § 235, title *Covenant;* Phillips, Ev. p. 90, title *Covenant;* 1 Chitty, Pl. chap. 3, pp. 115 *et seq.,* title *Covenant;* 1 Selwyn's Nisi Prius, pp. 547–549; 22 Enc. Pl. & Pr. p. 592, title *Variance; Dermott* v. *Jones* (D. C.) 23 How. 220; *Tyrer* v. *Chew,* 7 App. D. C. 182; *Ins. Co.* v. *Campbell,* 1 MacG. 255; *Littler* v. *Holland,* 3 T. R. 590; 8 Johns. R. 392; 3 Black. (Ind.) 22; 5 Gill & J. 239; 10 Bush, 51; 114 Mass. 1; 9 Johns. R. 115; 2 Wend. 399; 11 N. Y. 26; 9 Daly (N. Y.) 161; 97 Ga. 643; 16 Ill. 495; 48 Iowa, 466.    In MacA. 255, and 7 App. D. C. 182, the authorities are reviewed, and the rule as to pleading and proving performance of conditions precedent laid down.    In the former case, judgment for plaintiff was reversed for failure to prove performance of a condition precedent, and in the latter case judgment for plaintiff was reversed for failure to allege performance of a condition precedent.    In the present case performance was alleged but not proved.

In *Dermott* v. *Jones,* 23 How. 220, specially relied upon, judgment for plaintiff was reversed for error in permitting plaintiff, who had alleged performance of a condition precedent, to recover upon proof of excuse for nonperformance.    Even in actions upon contracts that may be varied by parol, an averment

of performance of a condition precedent is not sustained by proof of an excuse for nonperformance. If excuse for nonperformance is relied upon, it must be pleaded. 1 Chitty, Pl. pp. 321–326, title *Assumpsit.* Nor is an allegation that notice was given to defendant sustained by proof that notice was waived by defendant. If waiver of notice is relied upon, it must be pleaded. 14 Enc. Pl. & Pr. p. 1069, title *Notice;* 5 Mees. & W. 418; 4 Sandford (N. Y.) 665; 29 Iowa, 104. Plaintiff is required by the rules of the court below to set forth the true facts in its declaration (Rules 23, 73). The subject of variance is treated in 8 App. D. C. 131; 6 Cr. 219; 7 Wh. 527; 11 Wh. 174; 1 Pet. 67; 7 Pet. 607; 9 Pet. 503; 10 Pet. 209; 16 Pet. 323; 4 How. 148; 5 Wall. 698; 10 Wall. 299; 186 U. S. 365.

6. The surety was discharged by the payments to the principal in excess of the amounts demandable under the terms of the contract. 1 Brandt, Suretyship, § 397; *Board of Comrs.* v. *Branham,* 57 Fed. R. 179; *Backus* v. *Archer,* 109 Mich. 66; 7 Ad. & El. 143; 2 Keen, 664; 95 E. C. L. 550; 5 Gill & J. 314; 61 N. Y. 39; 36 Minn. 439; 87 Ind. 560; 49 Cal. 135; 65 Tex. 258; 23 Mo. 250; 11 S. W. (Ky.) 608; 35 Neb. 240; 17 N. Y. Sup. 235.

7. The surety was discharged by the rescission of part of the contract, whether the rescission was or was not prejudicial to the surety, unless the rescission was made with the surety's privity, knowledge, and consent. *Miller* v. *Stewart,* 9 Wheat. 703; *McMicken* v. *Webb,* 6 How. 298; *Reese* v. *U. S.* 9 Wall. 13; *U. S.* v. *Boecker,* 21 Wall. 652; *U. S.* v. *Freel,* 186 U. S. 316.

*Messrs. Chaney & Hart* and *Mr. Henry C. Smith* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The demurrer raising the question of jurisdiction was rightly overruled. *Howard* v. *Chesapeake & O. R. Co.* 11 App. D. C. 300, 333. In that case, the plaintiff, who was a citizen of the State of Indiana, sued the defendant, a foreign corporation,

to recover damages for an injury sustained on its railway in the
State of Kentucky.   Citation was served upon the agent of the
defendant, which maintained an office for the purpose of carry-
ing on business in the District of Columbia, under the provisions
of § 790, D. C. Rev. Stat., which reads:   "In actions against
foreign corporations doing business in the District, all process
may be served on the agent of such corporation, or person con-
ducting its business, or, in case he is absent and cannot be found,
by leaving a copy at the principal place of business in the Dis-
trict, and such service shall be effectual to bring the corporation
before the court."   This statute was passed February 22, 1867,
and remained in full force until it was incorporated, with con-
siderable amplification, in the Code which took effect January 1,
1902 (§ 1537).

By reason of the exclusive power of the United States within
the District of Columbia, the courts created therein by their au-
thority have, necessarily, from the first, exercised the ordinary
jurisdiction possessed by the Maryland State courts, before the
cession, as well as that ordinarily exercised by Federal courts
within the limits of the States.

These courts having from the beginning exercised jurisdiction
in actions against residents of the States, when found and per-
sonally served with process in the District, the statute above re-
cited was enacted by Congress, following the example of some
of the States, to meet a condition arising out of the rapid growth
of private corporations and the wide extension of their opera-
tions.   Foreign corporations were generally allowed to do busi-
ness in other States, and in the District of Columbia, and to ob-
tain redress in their courts; wherefore it was eminently proper
that provision should be made through which their liability,
when so engaged, might, in turn, be asserted.   *St. Clair* v. *Cox,*
106 U. S. 350, 355, 27 L. ed. 222, 224, 1 Sup. Ct. Rep. 354;
*Dallas* v. *Atlantic, M. & O. R. Co.* 2 MacArth. 146.

The last case, decided in 1875, maintained the view that the
supreme court of the District had jurisdiction in such a case,
upon service in accordance with the conditions of the statute,
and the same passed without question until the year 1897, in

the case of *Howard* v. *Chesapeake & O. R. Co.* 11 App. D. C. 300, 333.

The contention on behalf of the appellants in the present case raises a point that was not suggested in that of *Howard* v. *Chesapeake & O. R. Co.* That contention is that the District of Columbia is a judicial district, and that the special terms of its supreme court are circuit and district courts of the United States; wherefore their jurisdiction is governed by the judiciary act of March 3, 1887.

The clause of § 1 of that act, that is specially relied on, reads as follows:

"But no person shall be arrested in one district for trial in another in any civil action before a circuit or district court; and no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." 24 Stat. at L. 552, chap. 373, U. S. Comp. Stat. 1901, p. 508.

Without following the argument touching the question whether the trial courts of the District of Columbia are circuit or district courts of the United States in either a general or special sense, which we regard as irrelevant, our opinion is that § 1 of the act of 1887, defining the jurisdiction of those courts in districts within the several States, was not intended to apply in the District of Columbia.

Also, without pausing to discuss the particular objects apparent in the terms of that section, or to point out other and disastrous consequences that would follow the adoption of appellant's contention, we think it sufficient to say that the general restrictions of the Constitution, which govern the exercise of jurisdiction by the courts of the United States within the several States of the Union, have no operation in the District of Columbia, and the conditions of jurisdiction existing here are so different that the provisions of the particular section are plainly inap-

plicable.   That there may be some general provisions of that act not locally inapplicable, and therefore controlling under the provisions of § 93, D. C. Rev. Stat. (see also D. C. Code, § 1), is a question not involved.   That there may readily be such, however, is not inconsistent with our conclusion as to the operation of the particular section under consideration.

2.   The first contention on behalf of the appellants, going to the merits of the case, is that the jury should have been instructed to find for defendants, because the plaintiff's evidence failed to support the allegation of the declaration to the effect that the plaintiff had performed the conditions of the contract recited in the bond sued on.

It is argued that the agreement of October 26, 1898, rescinding the part of the contract of September 13, relating to the foundation, made a new contract, proof of the performance of which was not in accordance with the declaration aforesaid.

We fail to perceive any substantial ground for this contention. The original contract contained several distinct undertakings or promises, following each other in the necessary order of the prosecution of the entire work to be done.   For the performance of each a separate, independent price was agreed upon in payment.   The bond, by its terms, related to and covered each and every one of these undertakings of the contractor.   It was competent for plaintiff to show the performance on its part, or willingness at the proper time to perform each of these obligations, as well as the failure of the contractor under each, with the damages resulting therefrom.   It was competent to show a complete settlement for any item of the specified work as it progressed, in accordance with the requirement of the contract, if such was the case, confining the claim for damages, as was here done in the bill of particulars, to such as had not been performed; and it was equally competent to show that the obligation regarding any item had been fully settled and discharged by voluntary rescission.   The surety has no right to complain of the payment made to its principal in accordance with the letter of the contract, nor of the voluntary discharge of an independent part thereof when the same is its equivalent, where

there is no detriment to its interests. This is not the case of a material change of contract, or its extension. *Cross* v. *Allen,* 141 U. S. 528-537, 35 L. ed. 843-849, 12 Sup. Ct. Rep. 67.

This conclusion is unimportant, however, in view of the fact that the defendants' twelfth plea made this partial rescission of the original contract a special ground of defense, alleging that it was without the knowledge or consent of the surety, to which plaintiff replied, alleging consent, and the fact also that it lessened, instead of increased, the surety's liability. The evidence, without contradiction, tended to show the complete knowledge and acquiescence of the surety, through its agent; and, moreover, though the fact was apparently not treated as material, that the surety bond was not delivered, nor its premium paid, until the same day. This issue was submitted to the jury with appropriate instructions.

3. Another ground upon which error has been assigned in refusing to direct a verdict for the Fidelity company, to the effect that the plaintiff in an action upon the bond could not show a waiver of any one of the stipulated conditions precedent in lieu of performance, is likewise untenable. *Phillips & C. Constr. Co.* v. *Seymour,* 91 U. S. 646, 651, 23 L. ed. 341, 343; *Lamson & G. Mfg. Co.* v. *Russell,* 112 Mass. 387; 5 Enc. Pl. & Pr. 368; 4 Enc. Pl. & Pr. 630. The waiver of performance had not the effect to make a new contract or obligation, so as to bring the case within the line of authorities relied on by the appellant.

4. Assignments of error founded on objections to the introduction of the evidence tending to show waiver of the condition relating to the notice in writing required to be given to the Fidelity company, and on exceptions to the instructions relating thereto, that were given on behalf of the plaintiff, may be considered together. The declaration, it will be remembered, sets out this condition among others, and concludes with a general allegation of performance by the plaintiff of all the conditions of the bond and contract. Defendant followed pleas of general denial of indebtedness and damage with others, two of which specially denied the plaintiff's performance of the conditions of

the bond. These were stricken out on motion of the plaintiff, and there was no error in doing so, because it was necessary for plaintiff to make the proof as a condition of its recovery; or it could, as above held, prove the waiver of performance on the part of the defendant instead.

Notwithstanding the apparent justice of the verdict, in view of the uncontradicted evidence in support of the waiver, we are constrained to uphold the contention of the appellant, because there is no foundation therefor in the pleadings. Instead of pleading performance of the condition, as was done, the plaintiff should have alleged the facts constituting the waiver of the condition requiring the notice in writing, in excuse of nonperformance. 4 Enc. Pl. & Pr. pp. 629 *et seq.,* and cases last above cited.

5.   As the case must be tried anew, it is proper to say that there is nothing in the point made respecting the money appropriated by Congress for the relief of the principal contractor, Rohl-Smith, on account of the unforeseen conditions which required the increased excavation, and the driving of piles for the foundation. As a part of the contract with the Guilford company relating to work on the foundation had been voluntarily rescinded, those circumstances were irrelevant.

6.   There was no reversible error committed in refusing to permit the witness for the Guilford company to read in evidence the purported copy of the "log" kept by the plaintiff's foreman, Heidenreich, showing the items of expense incurred in furnishing the work of that contractor. The part of the same that had been copied by the witness, if it tended to contradict the plaintiff's claim in any particular, would have been admissible, had the absence or loss of the original been properly accounted for. The original had been delivered to the representative of the Guilford company, and, in the absence of proof that it had been returned to the plaintiff, it was incumbent upon the defendant to show that inquiry and search had been made for it of the persons with whom, or at the place where, it was said to have been left by the witness.

Finding no error in the proceedings relating to the Guilford Granite Company, the judgment as to it will be affirmed with costs; but, for the reasons given, the judgment against the Fidelity & Deposit Company of Maryland will be *reversed, with costs incurred on its behalf in this appeal, and the cause remanded for another trial. It is so ordered.*

Mr. Chief Justice ALVEY concurred, in the judgments entered, but not upon all of the grounds stated in the opinion.